IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL S. WILSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:15-cv-1249-NJR-DGW ) |
| PATRICIA RENSING, | ) ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is Defendant Patricia Rensing's Motion for Summary Judgment (Docs. 53 & 54). For the reasons set forth below, the Court grants the motion.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Michael Wilson ("Wilson") brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, based on events that occurred while he was incarcerated at Pinckneyville Correctional Center. The original Complaint included fifteen separate counts against twenty-seven different defendants (Doc. 10). The Court conducted a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Following that review, the only claim that remains in this case[1] is Wilson's First Amendment retaliation claim against Defendant Patricia Rensing for writing a disciplinary ticket in response to his verbal complaint that she had violated a prison rule (Doc. 10, p. 9).

In 2012, Wilson was an inmate at Pinckneyville Correctional Center. On or around

---
[1] Several other claims against different defendants were severed into separate cases (Doc. 10, p. 11).

November 14, 2012, Wilson attempted to get a replacement razor from Rensing (Doc. 54-1, p. 4), who was the Supply Supervisor at Pinckneyville (Doc. 54, p. 2). The parties disagree about whether Wilson was authorized to get the razor, as well as whether he was aggressive or used profanity during the incident (Doc. 54, p. 6; Doc. 58, p. 6). It is undisputed, however, that when Rensing refused to give him a replacement razor, Wilson took it upon himself to verbally inform her she was violating prison policy (Doc. 54, p. 6). It is also undisputed that Rensing issued Wilson a disciplinary ticket for unauthorized movement and insolence (Doc. 54, p. 6). Wilson spent thirty days in segregation, but admits that Rensing was not involved in any of the disciplinary proceedings or disciplinary recommendations resulting from the ticket she wrote (Doc. 54-1, p. 4; Doc. 58, p. 7).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th

Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

While the burden is on the moving party to show entitlement to summary judgment, Federal Rule of Civil Procedure 56(c)-(e), requires the non-moving party to properly address another party's assertion of fact.

> A party asserting that a fact is genuinely disputed must support that assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or present of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1)(A)-(B)

If a party fails to address any such assertion, the Court may consider the facts undisputed and can grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show the movant is so entitled. FED. R. CIV. P. 56(e)(2)-(3).

**PRELIMINARY MATTERS**

As stated above, the only claim pending before the Court is a claim that Rensing retaliated against Wilson in response to his constitutionally protected speech. Wilson appears to believe, however, that his claims are based on different constitutional provisions. Specifically, Wilson states in his response to the Motion for Summary Judgment that he "never alleged a violation of the First Amendment" (Doc. 58, p. 2).

Rather, he frames his claims as arising under the Fifth, Eighth, and Fourteenth Amendments (Doc. 58, p. 2). But in its preliminary review of this case, the Court specifically rejected Wilson's claims based on due process (Doc. 10, p. 9). Further, the claim against Rensing never appears to have implicated the Eighth Amendment, and Wilson fails to explain how the Eighth Amendment is applicable to his claims against Rensing. Although Wilson states he never intended to raise a First Amendment claim, he summarily alleges in his response that Rensing violated his First Amendment rights (Doc. 58, p. 2). Thus, the Court will analyze whether summary judgment is proper on those grounds.

## DISCUSSION

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper"); *see also Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).

To prevail on a First Amendment retaliation claim, a plaintiff must ultimately show that he (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges*, 557 F.3d at 546 (quoting *Massey v. Johnson*, 457 F.3d

711, 716 (7th Cir. 2006)).

*Protected Speech*

A prison regulation that impinges on a prisoner' constitutional rights, including the First Amendment, is valid if it is "reasonably related to legitimate penological interests." *Watkins v. Kaspar,* 599 F.3d 791, 794-95 (7th Cir. 2010). Legitimate penological interests include crime deterrence, prisoner rehabilitation, and internal prison security. *Pell v. Procunier,* 417 U.S. 817, 822-23 (1974). In the retaliation context, the Seventh Circuit has applied several factors to the question of whether the speech at issue is protected by the First Amendment, including: the impact of accommodating the speech on the prison and whether there were "alternative means" for the prisoner to express the speech. *Watkins,* 599 F.3d at 797.

Speech that directly challenges a prison official's authority and that could be conducted through other reasonable means, is generally not protected. In *Watkins v. Kaspar*, the Seventh Circuit found an inmate's speech challenging a prison librarian's policies, made in front of other prisoners, impeded her authority and her ability to implement library policy. *Id.* As such, the speech had a negative impact on the prison's legitimate penological interests in discipline. *Id.* Although prisoners have a right to complain about policies, they must do so in the manner consistent with their status as prisoners. *Id.* (citing *Freeman v. Tex. Dep't of Criminal Justice,* 369 F.3d 854, 864 (5th Cir. 2004)). This includes using alternative less disruptive approaches, such as the filing of a

written grievance, when available.[2] *Id.* The existence of alternative means ensures the prisoner has the right to speak, but does so in a manner that is consistent with legitimate penological concerns regarding safety. Thus, where the speech at issue implicates a legitimate penological interest, such as safety or discipline, and could reasonably be made in an alternative manner, the speech is not protected.

Here, Wilson's speech challenging Rensing's implementation of the razor policy is not protected. Like the librarian in *Watkins,* who was responsible for the running of the library, Rensing, as the Corrections Supply Supervisor, was responsible for running the commissary (Doc. 54, p. 2). In both cases, the speech by the prisoner voiced a direct challenge, thereby interfering with both the prison official's authority and the implementation of policy—both necessary to the legitimate penological interest of maintaining discipline. Further, like in *Watkins,* Wilson could have addressed his complaints through the prison grievance process. Prisoners have a right to speech, but not in any manner or place they desire. The existence of alternative and non-confrontational ways Wilson could have complained about Rensing's implementation of the razor policy means his speech is not constitutionally protected.

The Court notes that a second form of speech is at issue. Wilson's original complaint alleged that Rensing retaliated against him in response to a lawsuit he filed against another correctional officer named Gaetz (Doc. 10. p. 9). The filing of a lawsuit would qualify as a form of protected speech. *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir.

---

[2] The parties disagree about whether Wilson's speech was aggressive or involved profanity (Doc. 54, p. 6; Doc. 58, p. 6). The Court does not address those allegations because it finds the speech was not protected regardless of whether the speech was aggressive or involved profanity.

2000). However, Wilson's records show that he filed a grievance about the razor incident on December 14, 2012 (Doc. 1-1, p. 27). The Court takes judicial notice of the fact that Wilson's lawsuit against officer Gaetz was not filed until over one year later. *See Wilson v. Gaetz, et al.*, Case No. 14-cv-71-NJR-DGW (S.D. Ill. filed Jan. 21, 2014). Wilson offers no evidence to rebut these facts. Thus, the Court finds the lawsuit by Wilson against Gaetz could not be the speech that prompted Rensing's filing of the incident report, and therefore cannot form the basis for any First Amendment claim.

Even though the Court has found that Wilson did not engage in an activity protected by the First Amendment, for the sake of completeness, it will still address the remaining factors required to establish a retaliation claim.

*Deprivation*

As stated, to succeed on a retaliation claim, a plaintiff must also show that he suffered a deprivation that was so substantial it would deter a reasonable person from exercising his rights in the future. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Rensing argues the deprivation Wilson suffered, one month in segregation and one month on C grade status[3], was insubstantial (Doc. 54, p. 15). Rensing provides no legal support for this proposition and the Court is not convinced that one month in segregation would not deter a reasonable person from exercising his constitutional rights.[4] Thus, the Court finds evidence exists upon which a jury could find Wilson suffered a substantial deprivation.

---
[3] "C grade status" appears to indicate a reduction in privileges (*see* Doc. 54, p. 15).
[4] Rensing argues the Court can look to an individual plaintiff's subsequent activity to determine whether the alleged retaliation actually had a chilling effect (Doc. 54, p. 15), effectively applying a subjective

*Motivating Factor*

Finally, a plaintiff also has the burden of producing evidence that his speech was at least a motivating factor for the defendant's retaliatory action; that absent the retaliatory motive, things would have occurred differently. *See Bridges*, 557 F.3d at 546; *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

Wilson has presented no evidence that his speech regarding the razor was a motivating factor in Rensing's retaliatory action. The only basis for Wilson's claim is an unsubstantiated argument that Rensing "sought to scare me from my right to redress her fault by putting me in segregation for only correcting her verbally" (Doc. 58, p. 3). Wilson also admits, however, that Rensing was not involved in the hearing or the decision to put him in segregation (Doc. 58, p. 7). Thus, this statement appears to be pure speculation on Wilson's part. A party asserting that a fact is genuinely disputed must support that assertion with evidence. *See* FED. R. CIV. P. 56(c)(1)(A)-(B). Wilson has not, therefore, met his burden of producing evidence upon which a jury could find Rensing was motivated by Wilson's speech regarding the razor.

Further, as discussed above, the Court does not find credible Wilson's allegations that Rensing was motivated to retaliate against him due to his suing officer Gaetz. In order to show retaliation, a plaintiff must demonstrate that the defendant had actual knowledge of the protected conduct. *Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009);

---

standard. Rensing cites to *Harper v. Davis,* No. 09 C 0878, 2011 WL 3841703, at *7 (N.D. Ill. Aug. 23, 2011), a district court case, for this proposition. The Court notes, however, the court in *Harper* clearly articulated an objective standard. To the extent the district court may have applied a subjective standard, this Court respectfully disagrees.

*Garrett v. Barnes,* 961 F.2d 629, 632 (7th Cir. 1992). Here, the incident involving the razor took place prior to Wilson filing suit against Gaetz. Rensing could not have been motivated to retaliate against Wilson for something which had not yet occurred.

Thus, the Court finds that Wilson has failed to meet his burden of proving that Rensing retaliated against him because of his speech.[5]

## CONCLUSION

Because Wilson has failed to prove the speech at issue was constitutionally protected or that it motivated Rensing's action, summary judgment is appropriate. Accordingly, the Court **GRANTS** the Motion for Summary Judgment filed by Defendant Patricia Rensing (Docs. 53 & 54). The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED**

DATED: February 8, 2018

s/ Nancy J. Rosenstengel_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

---

[5] Because Wilson cannot meet his burden of proving Rensing retaliated against him for the expression of his First Amendment rights, the Court declines to address Rensing's additional arguments regarding sovereign immunity and qualified immunity (Doc. 54, pp. 16-17).